1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10

11   LARGAN PRECISION CO, LTD.,                      No. C 10-1318 SBA  (JL)

12              Plaintiffs,

13        v.                                         **ORDER GRANTING MOTION TO
                                                     MODIFY PROTECTIVE ORDER**
14   FUJINON CORPORATION,                            **(Docket # 88)**

15              Defendants.
     _____/
16
17        The motion of Largan Precision Co., Ltd. V Fujifilm Corporation (originally sued as

18   "Fujinon Corporation" to modify a protective order to permit use of discovery from this case

     in collateral litigation in Texas (Docket # 88) came on for hearing. Attorneys for Defendant
19
     and moving party were Kell Damsgaard and Rita E. Tautkus, MORGAN, LEWIS &
20
     BOCKIUS LLP. Attorney for Plaintiff was Michael J. Engle, PERKINS COIE LLP, Los
21
     Angeles. The Court carefully considered the moving and opposing papers and the
22
     arguments of counsel and hereby grants the motion.
23
          **I.      Introduction**
24
          All discovery in this case has been referred by the district court (Hon. Saundra
25
     Brown Armstrong) under 28 U.S.C. §636(b). Largan sued Fujifilm (as "Fujinon") seeking a
26
     declaratory judgment of non-infringement, invalidity and unenforceability of patents,
27
     specifically of U.S. patent No. 7,453,654 ("the '654 patent") entitled "Imaging Lens,
28

1   (Complaint at Ex. A) and U.S. Patent No. 7,535,658 ("the '658 patent") also entitled

2   "Imaging Lens" (Complaint at Ex. B). Fujinon/Fujifilm is the assignee of both patents.

3   Largan claims it developed imaging lens products, without knowledge of any of the patents

4   in suit. These imaging lenses can be used in such devices as cellular phones, web cams,

5   notebook computers, cameras, automobiles, and scanners. Largan claims its products are

6   more affordable than Fujinon's, and Fujinon cannot compete.

7       Largan alleges in its Complaint that Fujinon, a direct competitor of Largan, began a

8   campaign to make Fujinon's products more competitive with Largan's by trying to drive up

9   the effective cost of Largan imaging lens products through litigation and threats of litigation

10   against Largan customers, accusing the imaging lens products in the customers' products

11   of infringing Fujinon's patents. (Complaint at ¶ 6-11). One of those lawsuits is in the U.S.

12   District Court for the Southern District of Texas. (*Id.* at ¶12). Largan denies that the

13   accused products infringe any claims of the patent-in-suit, and alleges that the patents are

14   invalid, due to inequitable conduct before the U.S. Patent and Trademark Office ("PTO")(*Id.*

15   at ¶13).

16      **A.**    **Largan's Objections**

17       Largan argues that Fujifilm, a direct competitor of Largan, seeks to use Largan's

18   highly confidential information—including but not limited to source code and financial

19   information—in Fujifilm's litigation against a third-party, who is an indirect customer of

20   Largan. Fujifilm knew or should have known at the time it agreed to the protective order in

21   this case that it would want Largan's information in the third-party litigation, yet Fujifilm

22   agreed to a protective order that expressly prohibits use of Largan's confidential information

23   in third-party litigation.

24       Moreover, Largan contends that Fujifilm's motion should be denied because Fujifilm

25   allowed the litigation against the third-party to proceed for fourteen months before first

26   raising this issue with Largan. Now, on the brink of expert reports in the third-party litigation,

27   Fujifilm seeks modification of the protective order in this case to rescue it from its lack of

28   diligence. To make matters worse, Fujifilm apparently still does not know what materials it

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  wants to use in the third-party litigation as it now demands access to broad categories of

2  information such as discovery requests it has not yet served and depositions it has not yet

3  taken.

4         According to Largan, Fujifilm should not be rewarded for its unreasonable delay and

5  its repeated failure to specify precisely which items of Largan's highly confidential

6  information it seeks to use outside of Largan's supervision. Largan therefore requests that

7  Fujifilm's motion be denied. To the extent Fujifilm asserts that Largan's confidential

8  information is necessary or dispositive in the third-party litigation because the underlying

9  patent, accused product, and prior art are all the same, Largan also requests that the Court

10 order Fujifilm to consolidate the third-party litigation with this case. Alternatively, Largan

11 asks the Court to enjoin Fujifilm from litigating against the indirect customer HTC as a

12 "customer suit exception" pending the outcome of this litigation against the manufacturer

13 Largan.

14        Largan's basis for this request is that the only issue of infringement in the third-party

15 suit also is an issue in this litigation. The '654 patent, as evidenced by its very title "Imaging

16 Lens," clearly is directed to the imaging lenses manufactured by Largan, not cellular

17 phones sold by HTC. It is therefore undeniable that the real party-in-interest is the

18 manufacturer Largan, not Largan's indirect customer HTC. Because the real product at

19 issue is the Largan lens, "this case fits the 'customer suit' exception, whereby litigation

20 against or brought by the manufacturer of infringing goods takes precedence over a suit by

21 the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909

22 F.2d 1459, 1464 (Fed. Cir. 1990).

23        "At the root of the preference for a manufacturer's declaratory judgment action is the
          recognition that, in reality, the manufacturer is the true defendant in the customer
24        suit....it is a simple fact of life that a manufacturer must protect its customers, either
          as a matter of contract, or good business, or in order to avoid the damaging impact
25        of an adverse ruling against its products."

26 *Id.* (quoting *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)).

27

28

1    Courts regularly enjoin patentees from litigating against customers when there is a

2 separate proceeding against the manufacturer. See, e.g., id.; *Ciena Corp. v. Nortel*

3 *Networks Inc.*, No. 2:05 CV 14, 2005 WL 1189881, at *9-10 (E.D. Tex. May 19, 2005)

4 (granting injunction preventing suit against customer based on customer-suit exception);

5 *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, No. 04-1337-KAJ, 2005 WL 2465898, at

6 *3 (D. Del. May 18, 2005) (finding it "unwise" to allow litigation against customers

7
8    "when liability depends exclusively upon infringement being found as to an LCD
component that the defendants do not manufacture and when at least some of the
manufacturers of the LCDs are before the court and are willing to stand behind their
products in this litigation").

9

10    Largan therefore requests that the Court order Fujifilm to transfer and consolidate

11 the HTC litigation with this case or, in the alternative, enjoin Fujifilm from litigating the

12 customer suit against HTC pending resolution of the litigation against the manufacturer,

13 Largan.

14    Finally, Largan contends that Fujifilm has not even explored alternative means to

15 obtain this discovery, other than modifying the protective order to obtain it in the collateral

16 litigation. Fujifilm's only attempt to procure Largan's highly confidential data was to request

17 cross-use through the modification of the protective order. However, there are means for

18 Fujifilm to obtain the discovery it seeks from Largan in the third-party litigation without

19 resorting to this unconventional approach. Indeed, Fujifilm filed an exhibit providing

20 step-by-step instructions on the method of letters rogatory. [D.I. 89-10.]

21    Instead of pursuing such conventional means, Fujifilm allowed the HTC litigation to

22 proceed for fourteen months before even raising the issue of using Largan's confidential

23 information from this case in the HTC litigation. This fact underscores Fujifilm's lack of

24 diligence in seeking discovery from Largan in the HTC litigation. Instead of prosecuting its

25 case against HTC, Fujifilm seeks at the last minute to modify the protective order in this

26 litigation to gain access to whatever remaining information it may want. Largan asks this

27 Court not to modify the protective order to permit open-ended use of highly-confidential

28

1  materials in a third-party litigation simply because the requesting party failed to seek the

2  discovery it needed in a timely manner.

3    **B.    Fujifilm's argument in support of its motion to modify the protective
          order in this case**

4

5    In the Texas matter, Fujifilm is the plaintiff and asserts infringement of the same

6  patents at issue in this case, against the identical lens assemblies of Plaintiff Largan

7  Precision Co., Ltd. ("Largan") at issue in this case. The accused infringer in Texas is a

8  customer of Largan and has raised non-infringement and invalidity defenses identical to

9  those raised by Largan here and based on the same Largan lens assemblies that Largan

10 claims to be prior art to Fujifilm's patents in this case.

11    Fujifilm contends that the discovery materials at issue relate directly to the

12 overlapping issues between the two cases, specifically the design of the accused lens

13 assemblies, and the lenses alleged to be prior art in each case, as well as manufacturing

14 and financial data concerning those same products. These discovery materials have been

15 provided in this case (or will be provided soon) and are therefore already in the possession

16 (or soon will be) of Fujifilm's counsel. The materials are available only from Largan which,

17 because it is a Taiwan-based company, is beyond the reach of routine pretrial discovery

18 procedures in the Texas case. (Hence Largan's suggestion that Fujifilm can use Letters

19 Rogatory to obtain the desired discovery. This Court knows from first-hand experience how

20 cumbersome a process this is.)

21    Fujifilm agrees to limit any use of the discovery materials in Texas to the same

22 confidentiality provisions contained in the protective order in this case.

23    Fujifilm explains why, under the applicable law in the Ninth Circuit, it is appropriate

24 for this Court to modify the protective order in this case to allow use of some discovery

25 materials from this case in a collateral case pending in the Southern District of Texas. In

26 particular, Fujifilm described how the materials it seeks to use are relevant, under the test

27 applicable to these circumstances, and that any arguable reliance interest of Largan in

28 producing the materials under the protective order was outweighed by this Circuit's strong

1   policy of avoiding duplicative discovery.

2          Largan avoids and ignores this analytical framework, which is established by

3   controlling Ninth Circuit precedent. Instead, Largan never addresses the standards that the

4   Ninth Circuit has determined should govern Fujifilm's motion. Largan fails to identify a

5   single possible basis to conclude that it will suffer any risk of prejudice if this Court grants

6   the relief sought by Fujifilm, relief which will do no more than allow the same lawyers and

7   experts who already have access to the materials in this case to have the same access

8   under the same protections in the Texas case.

9          Fundamentally, Largan, according to Fujifilm, is just using another in a series of

10  tactical attempts to make it as hard as possible, and as expensive as possible, for Fujifilm

11  to litigate its claims in Texas. As Fujifilm has satisfied the applicable standard for modifying

12  the protective order in this case, and Largan has failed even to acknowledge that standard,

13  much less demonstrate that is has not been met, Fujifilm respectfully requests that its

14  motion be granted.

15  **II.      Analysis**

16  **A.      Largan's Opposition fails even to recognize that Ninth Circuit law
            strongly favors modification of Protective Orders to permit use of
17          discovery in collateral litigation.**

18          The Ninth Circuit "strongly favors access to discovery materials to meet the needs of

19  parties engaged in collateral litigation." See, e.g., *Foltz v. State Farm Mutual Auto. Ins. Co.,*

20  331 F.3d 1122, 1131 (9th Cir. 2003).The Ninth Circuit's rationale is that "[a]llowing the fruits

21  of one litigation to facilitate preparation in other cases advances the interests of judicial

22  economy by avoiding the wasteful duplication of discovery." *Foltz*, 331 F.3d at 1131.

23  Further, the Appeals Court stated: "[w]here reasonable restrictions on collateral disclosure

24  will continue to protect an affected party's legitimate interests in privacy, a collateral

25  litigant's request to the issuing court to modify an otherwise proper protective order so that

26  collateral litigants are not precluded from obtaining relevant material should generally be

27  granted." Id. at 1132 (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th

28

United States District Court
For the Northern District of California

1  Cir. 1992); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265-66 (9th Cir. 1964)).

2        Largan, however, suggests that completely different legal principles apply to the

3  issues raised by this motion, for example whether the circumstances underlying the

4  proposed modification were "foreseeable" when the order was entered. Opp. at 2-3.

5  Significantly, each of the cases Largan cited for this proposition are from other circuits,

6  none of which have adopted the approach employed in the Ninth Circuit to resolve the

7  question of when protective orders should be modified. Rather than focusing on notions of

8  foreseeability in determining whether to permit modification such as that sought by Fujifilm

9  here, courts in the Ninth Circuit apply a two-step inquiry: (1) whether the discovery is

10  relevant to the collateral proceeding, and its general discoverability therein, and (2) the

11  balance of any countervailing reliance interest of the party opposing the modification

12  against the policy of avoiding duplicative discovery. *Foltz*, 331 F.3d at 1132-33.

13        **B.     Substantive motions practice in opposition to a discovery motion is
14                improper.**

15        Largan in its opposition improperly requests that this Court summarily order the

16  collateral litigation in Texas be transferred to this District and consolidated with this matter,

17  or even that the Court enjoin Fujifilm from prosecuting that case. Largan's request is

18  contrary to basic civil procedure.

19        First, it is improper for Largan, in opposition to a discovery motion, to request an

20  Order from this Court seeking affirmative, substantive remedies. It is black letter law that a

21  party seeking to obtain an Order from the Court does so by filing a motion. See Fed. R. Civ.

22  P. 7(b) ("A request for a court order must be made by motion."); Civ. L.R. 7-1(a) ("Any

23  written request to the Court for an order must be presented by one of the following means,"

24  and listing motions or stipulation.). There is no basis for Largan, in opposing a motion to

25  modify the protective order in this case, to affirmatively ask the Court to transfer a case

26  from another District, or to enjoin Fujifilm from proceeding in that Court, and Largan does

27  not provide any authority to suggest that there is.

28        Second, even if it were permissible to seek such relief in opposition to a discovery

motion, and it clearly is not, it would not be proper to pursue the relief from this Court. The

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Order of Reference by which this matter was referred to this Court specifically defines the

2    scope of the referral to be "for all discovery." [D.I. 90.] See also Civ. L.R. 72-1. Largan may

3    not expand on its own authority the scope of Judge Armstrong's referral to this Court.

4            Third, Largan's request to transfer or stay the case in Texas has been tried before,

5    unsuccessfully. Fujifilm suggests that the purpose of these strategies is to impede and

6    delay.

7            When Fujifilm filed its case against HTC and HTC America in Texas, in a District in

8    which HTC America had offices and in a state in which it was incorporated, its counsel (the

9    same counsel representing Largan here) appeared at the initial conference before The

10   Honorable Vanessa Gilmore and represented that he intended to move to transfer the

11   Texas case to the Northern District of California because, by that time, Largan had filed this

12   action. Declaration of David M. Morris in Support of Reply, Ex. 1 at 7. In response, Judge

13   Gilmore said:

14           Don't spend a lot of time on that motion. I'm not saying don't do it. Don't spend
             a lot of your client's money and a lot of your capital on it. I don't see it at this
15           point in time. If you were going to bring them [Largan] in [to Texas], I would see
             your point. Other than that, I'm going to transfer because what? Because they
16           filed a dec. action four months later? They should have intervened in this case if
             they were interested in trying to figure out what is going on.

17

18   *Id.* at 7-8.

19           Shortly thereafter, HTC instead moved to transfer the case to the Western District of

20   Washington. After motions practice and discovery targeted to the question of venue, which

21   delayed the case for months, Judge Gilmore found Fujifilm's choice of venue to have been

22   proper and denied the transfer motion. *Id.,* Ex. 2.

23           Later, in this District, Largan's counsel have also attempted to interpose procedural

24   roadblocks, most recently by seeking to stay the litigation as to one of the patents-in-suit

25   pending resolution of a reexamination that was filed by Largan's counsel seven months

26   after Largan brought this lawsuit. [D.I. 76.] In an argument reminiscent of the argument it

27   makes in its opposition to the present motion, Opp. at 4, Largan argued that it would be

28   inefficient for it to have to litigate issues in this Court at the same time it was litigating the

**United States District Court**
For the Northern District of California

1 same issues before the PTO. *Id.* In the district court's Order denying Largan's motion to

2 stay, Judge Armstrong recognized the weakness of this argument:

3      Furthermore, it bears noting that Plaintiff elected to file its complaint under both
       patents, and later chose to file a request for reexamination of only the '658 patent. In
4      seeking reexamination, Plaintiff knowingly and willingly took actions that created the
       very situation about which it now complains.
5

6 [D.I. 92 at 7.] As Judge Gilmore recognized in Texas, when Largan chose to file its

7 declaratory judgment complaint in this District, three months after Fujifilm sued HTC in

8 Texas on the same patents, it had been free to seek to intervene in the Texas case or to

9 file its complaint there and seek to have the matters joined. It should not be heard to

10 complain now about the results of its decision to proceed in a second forum.

11      **III.    Conclusion**

12      This Court rules that the Motion to Modify the Protective Order to Permit Use of

13 Discovery Materials in a Collateral Case is GRANTED, as follows:

14      Paragraph 7.1 of the Patent Local Rule 2-2 Interim Model Protective Order that

15 governs discovery in this case shall be modified to permit the use in *Fujifilm Corp. v. HTC*

16 *Corp. and HTC America, Inc.*, (Civil Action No. 4:09-cv-04109) (S.D. Tex.) ("the Texas

17 litigation"), of the following discovery materials from this case for any Largan lens assembly

18 product that is identified either as an accused product or to support any defense in the

19 Texas litigation: (1) Code V files, (2) manufacturing specifications, (3) sales-related

20 documents (to include revenues, costs and identification of customers), (4) interrogatory

21 responses, (5) responses to requests for admission, and (6) portions of depositions (and

22 associated exhibits).

23      IT IS SO ORDERED.

24 DATED: March 30, 2011

25                                          _James Larson_

26 _____
                        JAMES LARSON
27              United States Magistrate Judge

28 G:\JLALL\CASES\CIV-REF\10-1318\Order Grant 88.wpd