UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LARGAN PRECISION CO., Ltd., | Case No: C 10-01318 SBA |
| Plaintiff, | **ORDER RE CLAIMS CONTRUCTION** |
| vs. | |
| FUJIFILM CORPORATION, | |
| Defendant. | |
| AND COUNTERCLAIMS. | |

Patentee Fujifilm, a manufacturer and seller of optical lenses, holds the rights to U.S. Patent Nos. 7,535,658 ("the '658 patent") and 7,453,654 ("the '654 patent"). These patents disclose optical lens configurations suitable for use in cellular telephone cameras. Largan Precision Company, Ltd. ("Largan") brings the instant declaratory relief action seeking a judicial determination that certain of its products do not infringe either of Fujifilm's patents. In turn, Fujifilm has counterclaimed for patent infringement. The Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1331.

The parties are presently before the Court requesting that it construe the terms which appear in four of the claims contained in the '658 patent: (1) "resin material"; and (2) "air distance." At the claims construction hearing, the Court recited its tentative decision regarding the construction of "air distance," and directed the parties to submit proposed constructions consistent with the Court's findings as to that term. As to "resin material," the Court directed the parties to submit supplemental briefing, which has been timely filed by both parties. Based on the arguments presented by the parties in Court and in their respective papers, the Court construes those terms below.

# I.      BACKGROUND

## A.      THE '658 PATENT

The '658 patent describes an imaging lens configuration designed for "high imaging performance" in a compact configuration.  First McCutcheon Decl. Ex. 1 ("'658 Patent") at col.2, ll.15-18, Dkt. 56-1.  The '658 patent's nine drawings each depict a configuration of four individual lenses that together form the patented lens assembly.  Id. at figs.1-9.  Figure One, reproduced below, shows an exemplary embodiment of the invention (one of the nine preferred embodiments shown in the '658 patent).



Id. at fig.1.  The configuration has four lenses—G1, G2, G3, and G4—labeled in increasing order as the distance increases from the object being imaged, which would be placed to the left of the lenses in the above exemplary drawing.  Each lens in the drawing has an object-side surface facing left and an image-side surface facing right.  Id. at col.5, ll.36-41.  The surfaces are labeled sequentially S1 through S8 as the distance increases from the object being imaged.  Id. at fig.1.  Spacing on the optical axis (Z1) between any surface (Si) and any adjacent surface (Si±1) is labeled with D1 through D10.  Id. at col.5, ll.42-44.

**B.     PATENT PROSECUTION HISTORY**

The parties do not dispute that the meaning of "resin material" to one skilled in the art of lens-making ordinarily *includes plastics*.  See Fujifilm Br. at 5; Largan Br. at 7; Supp. Largan Br. at 1.  Nonetheless, Largan's principal contention regarding the term "resin material" is that Fujifilm allegedly disavowed the use of plastics during the patent prosecution proceedings pertaining to the '658 patent in order to overcome the patent examiner's initial rejection of the patent claims.

### 1.     PTO Office Action

On August 19, 2008, the PTO issued its Office Action in which it initially rejected the claims in the '658 application.  See First McCutcheon Decl. Ex. 4 ("Prosecution History") at FC-L00014229, Dkt. 56-4.[1]  First, the patent examiner stated that, "Claims 1, 5, 8 and 10 are rejected under 35 U.S.C. [§] 102(e) as being anticipated by Shinohara (U.S. Patent No. 7,345,830)." Id. at FC-L00014230.  More specifically, the examiner found that Shinohara teaches all of the claimed limitations disclosed in each of the aforementioned claims.  Id. at FC- L00014230 to -L00014231.   In addition, the examiner rejected claim 9 on obviousness grounds under 35 U.S.C. § 103(a), again based on Shinohara.  Id. at FC-L00014231.  The examiner stated:

> Shinohara teaches all of the claimed limitations of the instant invention as outlined above with respect to claim 1, but fails to explicitly teach wherein each of the second to fourth lenses are made from a resin material.  However, Shinohara does teach the substitution of a plastic material for glass as the lens material (column 6, lines 46-48) such that *it would have been obvious to one of ordinary skill in the art at the time the invention was made to use a plastic material as taught by Shinohara for construction of the second to fourth lenses in the imaging lens for cost reduction.*

---

[1] Under 35 U.S.C § 102(a), a patent may be anticipated, and hence, invalid, if the claimed invention was described in a printed publication "before the invention thereof by the applicant for patent."   If the requirements for an anticipation defense are not satisfied, obviousness provides another basis for invalidating a patent.  35 U.S.C. § 103(a).  A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  Id.

1  Id. at FC- L00014231 to -L00014232 (emphasis added).[2]

2          **2.    Fujifilm's Response**

3          On December 19, 2008, Fujifilm submitted a Reply to the Office Action of August

4  19, 2008 ("Reply").  In response to the rejection of claim 9 as being obvious and hence

5  "unpatentable over Shinohara," Fujifilm argued that "the Examiner has failed to establish a

6  *prima facie* case of obviousness."  Id. at FC-L00014213.  In addition, Fujifilm noted that

7  claim 1 had been amended to include claim 9, and that claim 9 had been cancelled.  Id.

8          To address the examiner's rejection of claims 1, 5, 8 and 10 as anticipated by

9  Shinohara, Fujifilm cancelled claim 9 and incorporated claim 9 into claim 1 "to recite that

10  each of the second through fourth lenses is made of a resin material."  Id. at FC-

11  L00014212.[3]  In that regard, Fujifilm noted:  "Resin material is not mentioned in

12  Shinohara.  Hence, Shinohara does not disclose a lens made of a resin material.  [¶]

13  Therefore, Shinohara fails to teach all of the elements for amended claim 1."  Id.

14  According to Largan, Fujifilm's representations that Shinohara does not mention resin

15  material and does not disclose the use of a lens made of resin material demonstrate that

16  Fujifilm necessarily excluded plastic from the definition of "resin material."  Largan Br. at

17  7-9.

18      **C.   PROCEDURAL HISTORY**

19          Beginning in 2007, Fujifilm began suing cell phone manufacturers whose phones

20  use Largan lenses, alleging that such lenses violate Fujifilm's patents.  Compl. ¶¶ 9-12.  On

21  March 29, 2010, Largan filed the present civil action seeking a declaratory judgment that

22  the '654 and '658 patents are unenforceable.  Id. ¶ 28, 33.  Fujifilm answered and

23  counterclaimed on May 24, 2010.  Answer, Dkt. 13.  Fujifilm's counterclaims allege

24  infringement of the '654 and '658 patents by Largan, and assert that both patents are valid

25

26          [2] Shinohara's specification mentions that "[c]ost *can* be further curtailed by means of forming the lens from a plastic material."  See Engle Decl. Ex. 5 ("Shinohara") at col.6, ll.46-48, Dkt. 106-5 (emphasis added).

27          [3] Originally, only claim 9 included the "resin material" limitation for the second, third, and fourth lenses.  See Prosecution History at FC-L00014392 to -L00014395.

28

- 4 -

and enforceable.  Id.  During the pendency of this action, Largan also instituted an *inter partes* reexamination proceeding before the USPTO attempting to invalidate the '658 patent.  See First McCutcheon Decl. Ex. 8, Dkt. 56-8.  In the pending USPTO proceeding, Largan argues that prior arts disclose both the "resin material" and "air distance" limitations found in the '658 patent.  Id.

On October 27, 2011, the Court held a claims construction hearing to construe the terms "resin material" and "air distance."  The following table sets forth the parties' proposed constructions:

| Term, Phrase, or Clause | Fujifilm's Construction | Largan's Construction |
|---|---|---|
| "resin material" | "materials that include resin-like polymers or plastics" | "materials having physical properties of synthetic or natural polymers, *excluding plastic material*" |
| "air distance" | "two lenses are separated such that an air space exists between them" | "a gap between two immediately adjacent lenses, such that the corresponding lens surfaces are *not in physical contact*" |

Id. at 3 (emphasis added).

With regard to the term "air distance," Largan's took the position that there can be no air distance between the lenses if the two lenses are in contact with one another—such as the case where the lenses touch each other at the periphery.  At the claims construction hearing, however, the Court rejected Largan's contention and concluded that the mere fact that the lenses touch one another did not foreclose the existence of an air distance between them.  Nevertheless, the Court found that Fujifilm's proposed construction was ambiguous as to physical contact, and ordered the parties to propose a construction resolving this ambiguity consistent with its ruling.

As to the term "resin material," Fujifilm claims that it includes plastics.  Largan acknowledges that resin material typically encompasses plastics, but contends that Fujifilm disclaimed the use of plastic based on representations it purportedly made to the United States Patent and Trademark Office ("PTO") during the patent prosecution process.  At the

close of the claims construction hearing, the Court ordered the parties to submit supplemental briefing on this particular issue.

## II.  DISCUSSION

### A.  "AIR DISTANCE"

The parties have submitted revised, proposed constructions of the term "air distance," taking into account the Court's rejection of Largan's contention that no "air distance" can exist if the lenses are in physical contact with one another.  The parties now offer the competing constructions, as follows:

| Fujifilm's Construction | Largan's Construction |
| --- | --- |
| "An air space between two lenses wherein the lenses may or may not be in physical contact with each other." | "A space of air between at least one point on the image-side surface of the first lens and at least one point on the object-side surface of the second lens, such that the other points on the lens surfaces may or may not be in physical contact." |

The Court finds that these constructions are substantially similar.  Of the two proposals, however, Largan's more accurately reflects the Court's ruling.  Accordingly, the Court adopts Largan's proposed construction, as set forth above.

### B.  "RESIN MATERIAL"

#### 1.  Evidentiary Issue

Before turning to the merits of the parties' respective, proposed construction of "resin material," the Court must first address their dispute regarding the expert declaration from Dr. Duncan T. Moore which Largan submitted along with its supplemental claim construction brief.  Moore Decl., Dkt. 126.  Fujifilm objects to the Court's consideration of Dr. Moore's declaration on the grounds that he was not previously disclosed by Largan as an expert for purposes of claims construction.  Reply at 1-2, Dkt. 128.

Patent Local Rule 4-3 requires the parties to disclose in their Joint Claims Construction Statement ("Joint Statement") the identity of expert witnesses, as well as a

summary of the expert's opinion.  Here, Largan disclosed one expert in the Joint Statement—Dr. Richard G. Zech.  Joint Statement at 4, Dkt. 37.  Although Largan noted that it "may call one *or more* experts," see id. (emphasis added), Largan never sought to amend its disclosure to identify Dr. Moore and to provide a summary of his proposed opinions.  In light of Largan's failure to comply with the Patent Local Rules, coupled with the inherent prejudice to Fujifilm resulting from this untimely disclosure, the Court exercises its discretion and declines to consider Dr. Moore's declaration.  See Tri-Valley CARES v. U.S. Dept. of Energy, 671 F.3d 1113, 1131 (9th Cir. 2012) (court has discretion to disregard request which does not comply with the local rules).

### 2. Analysis

Federal courts must "indulge a 'heavy presumption' that claim terms carry their full ordinary and customary meaning[.]"  Omega Eng'g, Inc, v. Raytek Corp., 334 F.3d 1314, 1323 (Fed. Cir. 2003) (citations omitted).  Under the doctrine of prosecution disclaimer, however, representations made during the patent prosecution process may circumscribe the ordinary meaning of a claim if the patentee makes a "*clear and unmistakable* disavowal of scope during prosecution."  Purdue Pharma L.P. v. Endo Pharm. Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006) (emphasis added); Omega Eng'g, 334 F.3d at 1323 (prosecution disclaimer doctrine applies only if "the patentee *unequivocally* imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution") (citations omitted).  Where the alleged disavowal is ambiguous, however, the Court should decline to apply the doctrine.  Omega Eng'g, Inc., 334 F.3d at 1323 (citing cases).  To determine whether statements to the PTO constitute an unequivocal disavowal, the court must consider the context in which the statements were made and not review the statements in isolation.  See Elbex Video, Ltd. v. Sensormatic Elecs. Corp., 508 F.3d 1366, 1372 (Fed. Cir. 2007).

Largan argues that Shinohara disclosed the use of plastic, and that in an effort to distinguish the '658 patent from Shinohara, Fujifilm "unequivocally and unambiguously disclaimed plastic as a resin material."  Largan Supp. Br. at 1, Dkt. 124.  In particular, Largan points to Fujifilm's statement—"*Resin material is not mentioned in Shinohara.*

*Hence, Shinohara does not disclose a lens made of a resin material*"—as an alleged disclaimer of plastic.  The Court disagrees.  Fujifilm rendered the foregoing statement in response to the patent examiner's determination that claims 1, 5, 8 and 10 of the '658 patent were *anticipated* by Shinohara.  Under the doctrine of anticipation, a patent is invalid if "*each and every limitation* is found either expressly or inherently in a single prior art reference."  Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1375 (Fed. Cir. 2006) (emphasis added).  Thus, to distinguish its patent claims from Shinohara, and hence, avoid anticipation, Fujifilm amended claim 1 to recite that "each of the second to fourth lenses is made of a *resin material.*"  Prosecution History at FC-L00014212.  It was in that specific context that Fujifilm then *accurately* pointed out that Shinohara does not disclose, let alone mention, lenses made of resin material.  Given those circumstances, the Court is not persuaded that Fujifilm's statement is "so clear as to show reasonable clarity and deliberateness, . . . and so unmistakable as to be unambiguous evidence of disclaimer" as to the use of plastic lenses.  See Omega Eng'g, 334 F.3d at 1325 (citations omitted).

The Court's determination that Fujifilm did not unequivocally and clearly disclaim the use of plastic in the '658 patent is further supported by Fujifilm's response to the examiner's *obviousness* finding.  As noted, the patent examiner opined that although Shinohara did not teach the use of resin material for the four lenses, "it would have been obvious to one of ordinary skill in the art at the time the invention was made to use a plastic material as taught by Shinohara for construction of the second to fourth lenses in the imaging lens for cost reduction."  Prosecution History at FC-L00014231 to -L00014232.  In

response, Fujifilm did *not* argue that resin material does not include plastic.[4] Rather, Fujifilm argued that Shinohara could not be a prior art reference for the purpose of an obviousness rejection because both Shinohara and the '658 application were "owned by the same person or subject to an obligation of assignment to the same person." Prosecution History at FC-L00014214 (citing 35 U.S.C. § 103(c)). In other words, Fujifilm did not expressly address the question of whether Shinohara teaches the use of plastic lenses in lieu of glass, since, from Fujifilm's perspective, Shinohara was not a valid prior art reference for purposes of an obviousness finding in the first instance.

In sum, Fujifilm's statement regarding whether Shinohara mentions or discloses the use of "resin material" is, at best, ambiguous, which is insufficient to trigger the doctrine of prosecution disclaimer. Accordingly, the Court construes "resin material" as "materials that include resin-like polymers or plastics."

## III.   **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.      The term "air distance" is construed to mean: "A space of air between at least one point on the image-side surface of the first lens and at least one point on the object-side surface of the second lens, such that the other points on the lens surfaces may or may not be in physical contact."

_____

[4] Indeed, there was no need for Fujifilm to disclaim the use of plastic given that Shinohara does not disclose or teach the use of resin material *or* plastic. In passing, Shinohara merely mentions the use of plastic as a possible cost saving measure. As such, the reference to plastic was purely aspirational; that is, what *could be* done and not what was actually to be done. As a result, it is doubtful whether Shinohara's passing reference plastic would be sufficient to support an anticipation finding. See Sanofi-Sythelabo v. Apotex, Inc., 550 F.3d 1075, 1082 (Fed. Cir. 2008) ("An anticipating reference must be enabling; that is, the description must be such that a person of ordinary skill in the field of the invention can practice the subject matter based on the reference, without undue experimentation"); Godfrey L. Cabot, Inc. v. J.M. Huber Corp., 127 F.2d 805, 808 (5th Cir. 1942) (holding that a reference to the possible use of a limitation without sufficient disclosure of how to proceed with the limitation was not a proper disclosure); BLACK'S LAW DICTIONARY 532 (9th ed. 2009) (defining a patent disclosure as "[a] document explaining how an invention works in sufficient detail for one skilled in the art to be able to understand and duplicate the invention").

2.      The term "resin material" is construed to mean: "materials having physical properties of synthetic or natural polymers."

3.      The parties shall appear for a telephonic Case Management Conference on **October 17, 2012 at 2:30 p.m.**  Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement which complies with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court.  Plaintiff Largan shall assume responsibility for filing the joint statement no less than seven (7) days prior to the conference date.  Plaintiff's counsel is to set up the conference call with all the parties on the line and call chambers at (510) 637-3559.  NO PARTY SHALL CONTACT CHAMBERS DIRECTLY WITHOUT PRIOR AUTHORIZATION OF THE COURT.

IT IS SO ORDERED.

Dated:  September 17, 2012

SAUNDRA BROWN ARMSTRONG
United States District Judge